UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE CENTRAL INTELLIGENCE AGENCY, THE OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, THE UNITED STATES DEPARTMENT OF DEFENSE, and THE NATIONAL SECURITY AGENCY, <br><br> Defendants. | C.A. No. 22-cv-11532 |

## **COMPLAINT**

1. This is an action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## PARTIES

2. The American Civil Liberties Union of Massachusetts, Inc. ("ACLUM") is a Massachusetts non-profit corporation with its principal place of business in Boston, Massachusetts.

3. The Office of the Director of National Intelligence ("ODNI") is an agency of the government of the United States of America (the "U.S." or "United States").

4. The United States Department of Defense ("DOD") is a department of the government of the United States.

5. The Central Intelligence Agency ("CIA") is an agency of the government of the United States.

1

6. The National Security Agency ("NSA") is an agency of the government of the United States.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

8. Venue lies in the District of Massachusetts pursuant to 5 U.S.C. § 552(a)(4)(B), including because it is the district in which ACLUM has its principal place of business.

## FACTS

### Donald Trump is not the President.

9. Donald J. Trump occupied the office of President of the United States from January 20, 2017, until January 20, 2021.

10. Mr. Trump is not currently the President. On information and belief, since January 20, 2021, Mr. Trump has not held any federal office or employment.

11. On information and belief, the Mar-a-Lago Club is a club and hotel operated by the Trump Organization, under the control of Mr. Trump.

12. According to its website, the Mar-a-Lago Club is "the epicenter of the social scene in Palm Beach." Members access the property for dining and use of guest rooms, among other things. The Mar-a-Lago Club includes function space that can (with sponsorship of a club member) be rented for large public events, such as weddings, galas, and other parties, and guests at these events may also stay in rooms on the property.[1] People can reportedly enter and leave Mar-a-Lago without being publicly observed via one or more underground tunnels.[2]

---

[1] https://www.maralagoclub.com/Default.aspx?p=dynamicmodule&pageid=100007&ssid=100029&vnf=1

[2] https://www.theguardian.com/books/2022/aug/24/donald-trump-secret-mar-a-lago-stay-rudy-giuliani-drink-depression-wife-andrew-kirtzman-book

13. According to court documents, Mar-a-Lago has not contained any secure location authorized for the storage of classified information since at least the end of Mr. Trump's presidency.

14. Moving trucks containing boxes were reported observed entering Mar-a-Lago on January 18, 2021, two days before the end of Mr. Trump's presidency.

Donald Trump kept government documents and stored them at the Mar-a-Lago Club.

15. According to court documents, in May 2021, the National Archives and Records Administration ("NARA") requested that Mr. Trump return missing records from his administration. NARA continued to make such requests through December 2021.

16. According to court documents, Mr. Trump transferred 15 boxes of records to NARA in January 2022, some or all or which were transferred from the Mar-a-Lago Club.

17. NARA has stated that, when it reviewed these 15 boxes, it identified items marked as classified national security information, up to the level of Top Secret, and including compartmented information and Special Access Program materials. According to court documents, these items were unfoldered and mixed with other records.

18. According to court documents, NARA referred the concerns about the contents of the 15 boxes to the Department of Justice ("DOJ").

19. According to court documents, the Federal Bureau of Investigation ("FBI") conducted a review of the 15 boxes in May 2022. This review identified 184 unique documents bearing classification markings, including 25 marked Top Secret, 92 marked Secret, and 67 marked as Confidential. The review also identified markings indicating that the documents were compartmented or otherwise subject to dissemination controls, including markings indicating that

certain documents contained intelligence information derived from clandestine human sources and/or collection under the Foreign Intelligence Surveillance Act.

20. Also in May 2022, the DOJ served Mr. Trump with a grand jury subpoena for "[a]ny and all documents or writings in the custody or control of Donald J. Trump and/or the Office of Donald J. Trump bearing classification markings."

21. On May 25, 2022, counsel for Mr. Trump asserted in a letter to DOJ that a president has absolute authority to declassify documents. However, the letter did not assert that Mr. Trump had or had not declassified any particular documents during his single term as President.

22. According to court documents, Mr. Trump's representatives produced materials responsive to the grand jury subpoena at the Mar-a-Lago Club on June 3, 2022. A custodian of records also certified, "[b]ased upon the information that has been provided to [him/her]," that "[a]ny and all" documents responsive to the subpoena had been produced, and that "[n]o copy, written notation, or reproduction of any kind was retained as to any responsive document."

23. According to court documents, a preliminary review of the documents produced by Mr. Trump on June 3, 2022, revealed 38 documents bearing classification markings, including 17 documents marked Top Secret. Certain of the documents also bore markings indicating, among other things, they contained intelligence information derived from clandestine human sources and/or collection under the Foreign Intelligence Surveillance Act.

24. On August 5, 2022, the U.S. District Court for the Southern District of Florida issued a search warrant to search Mar-a-Lago for evidence pertaining to the potential violation of 18 U.S.C. § 793 (willful retention of national defense information), 18 U.S.C. § 2071 (concealment or removal of government records), and 18 U.S.C. § 1519 (obstruction of a federal investigation).

25. According to court documents, the FBI executed the search warrant at the Mar-a-Lago Club on August 8, 2022, and seized numerous government documents, including:

   a. From a "Box/Container" in an office, 7 documents marked Top Secret, 15 documents marked Secret, 2 documents marked Confidential, and 43 empty folders with "Classified" markings.[3]

   b. From an office, 2 documents marked Secret, and 1 document marked Confidential.

   c. From a storage area, 11 documents marked Top Secret, 37 documents marked Secret, 28 documents marked Confidential, and 5 empty folders with "Classified" markings.



*Figure 1: DOJ photograph of certain materials seized during search of Mar-a-Lago*

---

[3] As far as plaintiff can determine, the current location of the contents of these empty folders, if known, has not been publicly disclosed.

26. William Barr, who served as Attorney General during the Trump administration, has stated that there was no "legitimate reason" for the seized materials to be in Mr. Trump's possession after the conclusion of his presidency, if they are classified.[4]

### Donald Trump claims to have arbitrarily declassified national security information, including the documents found at Mar-a-Lago.

27. After the search, Mr. Trump reportedly issued a statement, which was read aloud on "Fox News" cable television, asserting that, while President, he "often took documents, including classified documents, to the residence" and "had a standing order that documents removed from the Oval Office and taken to the residence were deemed to be declassified the moment he removed them" (the "Alleged Declassification Standing Order").[5] In connection with the White House, the term "the residence" is generally understood to refer to the President's living area within the overall White House complex.[6]

28. After the search, Mr. Trump also reportedly stated on social media, in relation to the seized records, "Lucky I Declassified!"[7]

29. Concerning the Alleged Declassification Standing Order, John Bolton, who served as National Security Advisor during the Trump administration, reportedly stated that he was "never

---

[4] https://twitter.com/justinbaragona/status/1565752662917844994

[5] https://twitter.com/Acyn/status/1558261235883311106

[6] *See, e.g.*, Nancy Cook, "Forget the Oval. The real Trump action is in the residence." Politico (Nov. 24, 2019), https://www.politico.com/news/2019/11/24/trump-white-house-residence-power-epicenter-073139.

[7] https://twitter.com/newschannelnine/status/1564962019647832066

6

briefed on any such order, procedure, [or] policy when [he] came in" and that the Alleged Declassification Standing Order is "almost certainly a lie."[8]

30. Concerning the Alleged Declassification Standing Order, 18 former senior Trump administrations officials reportedly stated that they were not aware of any such order. Former Chief of Staff John Kelly reportedly stated, "Nothing approaching an order that foolish was ever given." Other senior Trump administration officials reportedly stated that Mr. Trump's claim to have issued the Alleged Declassification Standing Order is "[t]otal nonsense," "ludicrous," "ridiculous," and "bullsh*t."[9]

31. Concerning the Alleged Declassification Standing Order, Mr. Barr has stated that its existence is "highly improbable" and also, "if in fact he sort of stood over scores of boxes, not really knowing what was in them, and said 'I hereby declassify everything in here,' that would be such an abuse, and show such recklessness, that it's almost worse than taking the documents."[10]

32. On September 12, 2022, Mr. Trump's counsel wrote in court documents that "there still remains a disagreement as to the classification status of the documents."[11]

33. However, it appears that Mr. Trump has never submitted the Alleged Declassificatoin Standing Order in any judicial proceeding, nor any other evidence that he actually declassified the particular documents at issue. There is reason to believe that the Alleged Declassification Standing Order is simply a lie intended to obscure Mr. Trump's crimes or other official misconduct.

---

[8] https://www.nytimes.com/2022/08/14/us/politics/trump-documents-explanations.html?smid=tw-share

[9] https://www.cnn.com/2022/08/18/politics/trump-claim-standing-order-declassify-nonsense-patently-false-former-officials/index.html

[10] https://twitter.com/justinbaragona/status/1565752662917844994

[11] https://storage.courtlistener.com/recap/gov.uscourts.flsd.618763/gov.uscourts.flsd.618763.84.0.pdf

<u>There is a strong public interest in the immediate disclosure of whether Donald Trump issued the Alleged Declassification Standing Order.</u>

34. In summary, it appears that one of two things must be true: either (a) that Mr. Trump potentially imperiled national security by stealing classified documents and storing them in a hotel; or (b) that Mr. Trump potentially imperiled national security by arbitrarily declassifying sensitive materials based solely on their physical movement within the White House.  There is a strong public interest in the immediate disclosure of which of these two scenarios is true.

35. Further, to the extent that Mr. Trump did arbitrarily declassify national defense or intelligence information, there is a strong public interest in disclosure of what materials, or at least generally what types of materials, were arbitrarily declassified.

36. On August 15, 2022, ACLUM submitted FOIA requests to ODNI, DOD, the CIA, the NSA, the Department of Homeland Security ("DHS"), and the National Geospatial-Intelligence Agency ("NGA"), among others.  The requests sought the following records from each:

   a. "The Alleged Declassification Standing Order."

   b. "Any written transmittal of the Alleged Declassification Standing Order from the Executive Office of the President of the United States to [the receiving department/agency], including by letter, memoranda, or email."

   c. "All records created by [the receiving department/agency] that were declassified pursuant to the Alleged Declassification Standing Order."

37. These requests also sought a waiver of fees because, among other things, disclosure of the requested information is in the public interest, and the request is primarily and fundamentally for non-commericial purposes.

38. In a letter dated September 12, 2022, DHS stated that, after a "comprehensive search of files with the The Office of the Executive Secretary (ESEC) and the Office of the Chief Information Officer (OCIO)," it was "unable to locate or identify any responsive records."



*Figure 2: Excerpt of DHS response letter*

39. In a letter dated September 8, 2022, the NGA stated that an "extensive search of National Geospatial-Intelligence Agency records failed to identify any documents in our files that are responsive to your request."



**NATIONAL GEOSPATIAL-INTELLIGENCE AGENCY**
7500 GEOINT Drive
Springfield, Virginia 22150

NGA-2022-FOIA-00055

September 8, 2022

Mr. Daniel L. McFadden
Staff Attorney
ACLU Foundation of Massachusetts
dmcfadden@aclum.org

RE: Freedom of Information Act (FOIA) Request NGA-2022-FOIA-00055

Dear Mr. Daniel L. McFadden:

This letter is in response to your Freedom of Information Act (FOIA) request, submitted to the National Geospatial-Intelligence Agency (NGA) dated 15 August 2022, in which you requested: *"ACLUM requests that the National Geospatial-Intelligence Agency ("NGA") produce the following records:*

*1. The Alleged Declassification Standing Order.*
*2. Any written transmittal of the Alleged Declassification Standing Order from the Executive Office of the President of the United States to NGA, including by letter, memoranda, or email.*
*3. All records created by NGA that were declassified pursuant to the Alleged Declassification Standing Order.*
*For Requests 1 & 2, please provide all responsive records from January 20, 2017, through*
*January 20, 2021.*
*For Request 3, please provide all responsive records declassified from January 20, 2017, through*
*January 20, 2021."*

Our extensive search of National Geospatial-Intelligence Agency records failed to identify any documents in our files that are responsive to your request.

If you consider this no-record response to be a denial of your request, you may appeal our determination in writing. Appeals to this determination should be made in writing within 90 calendar days from the date of this letter. In the appeal, you should reference FOIA case NGA-2022-FOIA-00055 detailing your reasons for reconsideration and include a copy of this letter. Your appeal should be mailed to the National Geospatial-Intelligence Agency, FOIA/Privacy Act Program Office, Mail Stop N22-SISM, 7500 GEOINT Drive, Springfield, VA  22150.

*Figure 3: Excerpt of NGA response letter*

40.   ODNI acknowledged receipt of the request on August 17, 2022.  In a letter dated September 14, 2022, ODNI assigned the request tracking number DF-2022-00377, granted a fee

waiver, and stated that, due to "unusual circumstances," it "need[s] to extend the time limit to respond to your request beyond the ten additional days provided by statute."

41. DOD assigned the request reference number 22-F-1246. In a letter dated August 18, 2022, DOD stated that it "will not be able to respond within the FOIA's 20-day statutory time period as there are unusual circumstances which impact our ability to quickly process your request." DOD did not assert any extension of the time period. The department's online FOIA portal currently indicates that the request is "in process" with an estimated delivery date in January 2023.

42. In a letter dated August 29, 2022, the CIA assigned the request reference number F-2022-01725 and granted a fee waiver. The agency's online FOIA portal currently indicates that the request is "in process," and there is no indication of an estimated delivery date.

43. In a letter dated September 12, 2022, the NSA assigned the request reference number 114765, stated that NSA is "experiencing delays in processing, and stated that "[o]nce we begin to process your request we will respond to you further." The NSA did not provide any estimated delivery date.

## CLAIM FOR RELIEF

### Count I: FOIA 5 U.S.C. § 552

44. The foregoing allegations are re-alleged and incorporated herein.

45. Defendants have not produced the records sought by the requests.

46. ACLUM is entitled to a waiver of search, review, processing, and duplication fees in connection with the requests.

47. ACLUM has exhausted administrative remedies to the extent required by law.

<u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff asks this Court to GRANT the following relief:

1. Order that Defendants shall search for and produce the requested records;

2. Enjoin Defendants from charging Plaintiff search, review, processing, and duplication fees in connection with responding to the Request;

3. Grant such other relief as the Court may deem just and proper.

Date: September 19, 2022

Respectfully Submitted,

*/s/ Christopher E. Hart*
Christopher E. Hart (BBO #625031)
Natalie F. Panariello (BBO #707579)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
chart@foleyhoag.com
npanariello@foleyhoag.com

Daniel L. McFadden (BBO #676612)
Matthew R. Segal (BBO #654489)
American Civil Liberties Union Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
dmcfadden@aclum.org

*Counsel for Plaintiff*